154

GENERAL TELEPHONE COMPANY OF OHIO, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as General Tel. Co. v. Pub. Util. Comm. (1976),
45 Ohio St. 2d 154.]

(No. 75-275—Decided February 18, 1976.)

156

.. *Messrs. Power, Jones & Schneider* and *Mr. William H. Schneider*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. Charles S. Rawlings*, for appellee.

*Per Curiam.* The issue in this appeal is whether the order of the Public Utilities Commission is unreasonable or unlawful.

Appellant argues, in a single proposition of law, that "[i]t is unreasonable and unlawful for the Public Utilities Commission to order the institution of extended area service where the need for such service is minimal and the revenues generated by the service are completely inadequate to cover its costs."

Section 23.04 of the Code of Rules and Regulations of the Public Utilities Commission of Ohio provides factors to be considered by a telephone utility when "confronted with a situation suggesting a possible 'extended area service' requirement * * *." Factors set forth in Section 23.04 include:

"(1) Community of interest factors:

"a. The volume of message toll telephone traffic between the exchanges involved, *i. e.*, the calling rate.

"b. The distribution of the calling to determine wheth-

er the traffic is originated by the subscribers generally or by only a relatively few subscribers.

"\* \* \*

"c. The location of various services, products and activities, a partial list of which is set forth below.

"1) Population movement,

"2) School activities,

"3) Police and Fire Service,

"4) Other governmental services,

"5) Medical, dental and veterinarian service,

"6) Churches,

"7) Agricultural organizations,

"8) Shopping and service centers,

"9) Employment centers, and

"10) Social interest.

"(2) Other pertinent factors:

"a. Investment and cost considerations are of importance. It would not be in the public interest for a telephone utility to enter into exceptionally heavy investments in facilities and incur exceptionally high costs in situations where the 'extended area service' requirement was slight. Therefore, each of the factors must be evaluated in relation to all other factors. Timing is an important cost consideration and substantial weight must be given to plans for instituting the service in the most economical manner and at the most economical time.

"b. Willingness of a substantial majority of the subscribers to pay appropriate rates is a basic and necessary condition to the institution of 'extended area service.' The demands of a few subscribers should not force the institution of a more costly telephone service contrary to the wishes of a majority of the subscribers."

The commission, in its opinion and order, observed that there was evidence "that General Telephone Company of Ohio would have a total initial investment of $115,977 and that the annual cost of maintenance would amount to $34,456." The commission concluded, however, that these costs "of institution and maintenance of the service are

not unduly high"; that "the evidence demonstrates a community of interest between the Laurelville and Circleville exchanges"; and that the "granting of the two-way non-optional extended area service * * * would be in the public interest."

Appellant urges that "the community of interest factors are minimal; that the investment and cost considerations oppose the granting of the requested extended area service; and the willingness of subscribers to pay appropriate rates can be demonstrated only as to rates which are grossly inadequate to pay for the costs associated with the extended area service."

Appellant's arguments are basically directed toward the conclusions drawn by the commission from the evidence before it.

Paragraph four of the syllabus in *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 330 N. E. 2d 1, reads:

"As to evidentiary matters in appeals from the Public Utilities Commission, this court will not substitute its judgment for that of the commission concerning conclusions drawn unless the findings and order are manifestly against the weight of the evidence or there is no evidence."

An examination of the record indicates that there is evidence to support the conclusions of the commission and that the findings and order of the commission are not manifestly against the weight of the evidence.

The order of the commission, being neither unreasonable nor unlawful, is affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.