CLIFFORD ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION
OF OHIO ET AL., APPELLEES.

[Cite as Clifford *v.* Pub. Util. Comm. (1986), 24 Ohio St. 3d 162.]

(No. 85-1733—Decided June 25, 1986.)

*Oberholtzer, Filous & Young* and *John C. Oberholtzer,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Ann E. Henkener,* for appellee.

*Cheryl A. Klepper,* for intervening appellee.

*Chorpenning, Good & Mancuso* and *Robert DeLambo,* urging reversal for *amicus curiae,* Ohio Farm Bureau Federation, Inc.

*Per Curiam.* The issue before this court is whether the PUCO failed to consider all of the factors outlined in Ohio Adm. Code 4901:1-7-04 before denying appellants' petitions for EAS between Medina and Wadsworth. For the reasons set forth below, we hold that the order of the PUCO in the matter before us was made after a thorough and proper consideration of the law relative to this case and, therefore, should not be reversed.

At the outset, we note that a finding and order of the PUCO should not be disturbed unless it appears from the record to be manifestly against the weight of the evidence and so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty. *C & SOE* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 120 [12 O.O.3d 122]; *General Tel. Co.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 154 [74 O.O.2d 267]; *Kenton* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 71 [32 O.O.2d 52]; *Cleveland* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 82 [32 O.O.2d 58].

In determining whether the establishment of EAS is warranted, Ohio Adm. Code 4901:1-7-04 sets forth a number of general factors to be considered:

"* * * When confronted with a situation suggesting a possible 'extended area service' requirement a telephone utility shall consider, but not limit itself to, all of the following factors:

"(A) Community of interest factors:

"(1) The volume of message toll telephone traffic between the exchanges involved, i.e., the calling rate.

"(2) The distribution of the calling to determine whether the traffic is originated by the subscribers generally or by only a relatively few subscribers.

"(Note: With reference to (1) and (2) above, when the main stations of the smaller of the two exchanges involved number more than 40% of the total of the main stations in both exchanges, the calling rate and distribution of the calling in each exchange shall be determined; otherwise the calling rate and distribution of the calling in the smaller exchange only shall be determined.)

"(3) The location of various services, products and activities, a partial list of which is set forth below.

"(a) Population movement.

"(b) School activities.

"(c) Police and fire service.

"(d) Other governmental services.

"(e) Medical, dental and veterinarian service.

"(f)  Churches.

"(g)  Agricultural organizations.

"(h)  Shopping and service centers.

"(i)  Employment centers.

"(j)  Social interest.

"(B)  Other pertinent factors:

"(1)  Investment and cost considerations are of importance. It would not be in the public interest for a telephone utility to enter into exceptionally heavy investments in facilities and incur exceptionally high costs in situations where the 'extended area service' requirement was slight. Therefore, each of the factors must be evaluated in relation to all other factors. Timing is an important cost consideration and substantial weight must be given to plans for instituting the service in the most economical manner and at the most economical time.

"(2)  Willingness of a substantial majority of the subscribers to pay appropriate rates is a basic and necessary condition to the institution of 'extended area service.' The demands of a few subscribers should not force the institution of a more costly telephone service contrary to the wishes of a majority of the subscribers."

This rule also states that EAS is not a substitute for message toll telephone service, but rather is a service designed to meet the day-to-day calling requirements of telephone subscribers which could not properly be met with local calling confined to a single exchange area.

Appellants argue that in denying their requests for EAS, the PUCO improperly relied solely upon the calling rate in its determination of the community interest factor, and in addition, improperly relied upon the case of *Kruez* v. *United Tel. Co.,* case No. 78-889-TP-PEX (August 1, 1979), wherein the PUCO stated:

"* * * [U]nder normal circumstances, and in the absence of other compelling considerations, the Commission believes that an average calling rate of less than three (3) calls per main station per month between two exchanges is insufficient to support the approval of extended area telephone service."

Appellants assert that a single statistic, a calling rate, should not be the sole determining factor in deciding whether community interest is sufficient or insufficient. Appellants contend that other factors, such as the number of subscribers signing the petition, the number of subscribers testifying at the hearing and the sheer volume of calls between the two exchanges, identify a sufficiently strong community interest in EAS, in this case, to warrant its approval.

Appellants also take exception to the PUCO's bifurcation of the inquiry process. Particularly, appellants complain that the PUCO improperly failed to require GTE to determine the costs related to EAS and that no determination of the community's willingness to bear those costs was made.

Appellees maintain that the PUCO properly bifurcated its inquiry into the propriety of EAS by first allowing a hearing to determine community interest, and that the determination of community interest was assessed in accordance with both the administrative rule and the *Kruez* case. We find appellees' position most persuasive. A review of the commission's order dated July 23, 1985 clearly shows that in reaching its decision, the PUCO considered all of the relevant community interest factors outlined in the rule.

In addition to considering the calling rate as calculated by GTE, the PUCO also considered the increased effect appellants' proposed methods of calculation would have on the calling rates. The PUCO had before it testimony that the slight increases in the calling ratios produced by varying the means of calculation would still demonstrate an insufficiently low rate of monthly calling per main station. The PUCO's inquiry did not stop here, however, as asserted by the appellants. Pursuant to the rule, the PUCO also determined that the distribution of calls in each exchange likewise failed to support the establishment of EAS. The PUCO concluded that during the study period only 25.53 percent of Medina subscribers and only 38.06 percent of Wadsworth subscribers made one or more toll calls to Wadsworth or Medina, respectively. Similarly, the PUCO, after analyzing the third factor set forth in the rule, to wit: the location of various services, products and activities, concluded that:

"The reliance of the Medina subscribers upon the services, products, and activities of the Wadsworth Exchange and vice versa is not sufficient to justify the institution of the requested services."

A review of the evidence shows that the PUCO clearly had sufficient information before it to support its findings and determination that there was not a sufficient community of interest in this case. Therefore, we find no sound basis for disturbing the PUCO order.

While we do not mean to suggest by this opinion that bifurcation of the inquiry process is always warranted, in light of the stated purpose of EAS, namely, to provide for "the day-by-day calling *requirements* of subscribers" (emphasis added), rather than to provide a "substitute for message toll telephone service," the PUCO's bifurcation of its inquiry into the propriety of EAS was not unreasonable. It would appear that it would be unnecessarily burdensome to order an expensive cost analysis or a consumer canvass to determine willingness to pay appropriate rates if community interest, as reflected by infrequent calling, appears insufficient.

Accordingly, we affirm the order of the commission.

*Order affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WOLFF, JJ., concur.

WOLFF, J., of the Second Appellate District, sitting for WRIGHT, J.